IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FRANK LEE McCORMICK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALABAMA DEPARTMENT OF )<br>CORRECTIONS; RICHARD ALLEN; )<br>KENNETH JONES, )<br>)<br>Defendants ) | Case No. 2:06-cv-310-TMP |

MEMORANDUM OPINION

This case comes before the court on the motion for summary judgment filed by the defendants on May 3, 2007 (Doc. 18). On June 6, 2007, plaintiff, through counsel, filed a motion seeking an extension of time in which to respond to the motion for summary judgment, which was granted.[1] Plaintiff was given until June 18, 2007, to file his opposition. At this time, no opposition has been filed, nor has plaintiff sought any further extensions of time.

Summary Judgment Principles

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[1] On that same date, the parties consented to the exercise of dispositive jurisdiction by the undersigned, pursuant to 28 U.S.C. § 636(c). See Doc. 22.

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

Facts For Summary Judgment Purposes

Applying these principles to the evidence before the court (presented exclusively by the defendants), the following facts appear to be undisputed. Plaintiff entered the Alabama Department of Corrections on October 22, 2001, following convictions for burglary and escape. He was housed at the William E. Donaldson Correctional Facility, where defendant Kenneth Jones is the warden. The Commissioner of the Department of Corrections at the time was Donal Campbell, but he later resigned and was replaced by the current commissioner, Richard Allen.

On April 5, 2005, plaintiff was transferred from general population to the administrative segregation unit after he reported that he had been assaulted by another inmate, allegedly because plaintiff had "snitched him out." The court notes that on that date, plaintiff reported to the prison infirmary with a red mark on his cheek, refusing to explain how he received the mark. Plaintiff also was serving disciplinary segregation for two infractions of his own. When he completed his disciplinary time, his status was reviewed by the Institutional Segregation Review Board, and on May 18, 2005, plaintiff informed the board that he would not go back into general population because he feared being attacked by the inmate or members of the gang the inmate was part of. On May 24, 2005, the board conducted a review, with the plaintiff present, and concluded that plaintiff should remain in segregation for his own protection and as an institutional security measure. Because plaintiff could not identify the "unknown gang members" that might assault him, he could not be transferred to population in another institution for fear that gang members might be there.

During his incarceration in the Alabama DOC, plaintiff has had an extensive medical record for such illnesses as asthma, self-mutilation, substance abuse, and diabetes, for which he has received frequent care and treatment. Defendants have submitted a copy of plaintiff's medical file,

which is over 500 pages in length. On August 30, 2005, plaintiff also was diagnosed with hepatitis C, a degenerative liver disease that often leads to cirrhosis and death. Plaintiff was screened for the advisability of treatment for the disease, and was informed on November 15, 2005, that he met the criteria for treatment and that he should be transferred to the St. Clair Correctional Facility to participate in the hepatitis C and chronic disease treatment program there. Plaintiff responded to the prison physician that he wanted the treatment, but not at that time. He explained that he was waiting to receive a Christmas package, and if he were transferred, it would not get to him.

Prison physicians at Donaldson continued to monitor plaintiff's condition until May 1, 2006, when he was again screened for treatment and he consented to transfer and treatment at St. Clair. He was transferred to St. Clair the next day, May 2, 2006, where he began treatment for hepatitis C. Treatment was discontinued in September 2006, when plaintiff's blood platelet count dropped below 50,000, consistent with the recommendations of the manufacturer of the medication. Plaintiff continues to be housed at St. Clair and monitored by the chronic disease program there.

At some point during plaintiff's assignment to the Donaldson segregation unit, he claimed to have been stabbed by another inmate, but there is no evidence corroborating this claim. There is no indication in plaintiff's long medical record that he ever sought care or treatment for a stab wound. There also is no indication that plaintiff has ever identified the alleged attacker to prison officials, nor has he offered any evidence that prison officials should have been aware of the risk to plaintiff.

Eleventh Amendment Immunity

At the outset, it is clear that plaintiff's claims against the Alabama Department of Corrections and Commissioner Richard Allen,[2] in his official capacity, are barred by Eleventh Amendment Immunity.  See Alabama Department of Corrections v. Pugh, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978).  To the extent that plaintiff may be seeking prospective injunctive relief against the Commissioner, the undisputed facts here fail to establish any ongoing condition violative of the plaintiff's constitutional rights.  He has been transferred to the chronic care program at St. Clair, where his medical condition is carefully monitored.  Thus, his claim for injunctive relief is now moot.  See Tucker v. Phyfer, 819 F.2d 1030 (11th Cir. 1987).

The claims against these two defendants, therefore, are meritless and due to be dismissed.

Claims Against Warden Jones

The complaint appears to allege three distinct claims against the defendants, including defendant Warden Jones: (1) that plaintiff has been denied medical treatment for hepatitis C, in violation of his Eighth Amendment right to be free from cruel and unusual punishment[3]; (2) that his continued isolation in segregation constitutes cruel and unusual punishment, in violation of the Eighth Amendment; and (3) that Warden Jones failed to protect him from being stabbed by another

---

[2]  Although the original complaint named Donal Campbell as the commissioner defendant, he was replaced by Richard Allen.  Thus, there never was any claim alleged against Campbell personally, and his replacement by Allen removed him from the case.

[3]  Counts one and three of the complaint both focus on alleged inadequate medical care, the first specifically alleging denial of treatment for hepatitis C, while the latter alleges a general deterioration of the plaintiff's health.

6

inmate, also in violation of his Eighth Amendment rights. The undisputed evidence refutes each of these claims.

Of course, with respect to all of these claims, Warden Jones cannot be held liable solely on the basis of his supervisory position over other prison employees and officials. There is no vicarious liability of supervisors under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct 2018, 56 L. Ed. 2d 611 (1978). As the court of appeals has explained:

> "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); Gonzalez, 325 F.3d at ___, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. Gonzalez, 325 F.3d at ___, 2003 WL 1481583, at *5; Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Gonzalez, 325 F.3d at ___, 2003 WL 1481583, at *5 (quoting Braddy v. Fla. Dept. of Labor & Employment, 133 F.3d 797, 802 (11th Cir. 1998)); Brown, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez, 325 F.3d at ___, 2003 WL 1481583, at *5 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)); Hartley, 193 F.3d at 1263; see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at ___, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

Cottone v. Jenne, 326 F.3d 1352, 1360-61 (11th Cir. 2003).

I.  Medical Care

In order to show that a prison official is liable for failing to provide adequate medical care in violation of the Eighth Amendment prohibition against cruel and unusual punishment, the plaintiff must show that the official was deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991). The conduct of state officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. Estelle, 429 U.S. at 106; McElligot v. Foley, 182 F.3d 1248 (11th Cir. 1999). Likewise, a mere difference of opinion between an inmate and medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. Harris, *supra* at 1505.

There simply is no evidence that Warden Jones was deliberately indifferent to plaintiff's serious medical needs. Plaintiff's 500-plus page medical record demonstrates that he received frequent medical attention for all sorts of ailments. Although Warden Jones was not directly responsible for plaintiff's medical care, the record shows that plaintiff was diagnosed with hepatitis C, promptly screened for treatment for the disease, and offered a transfer to the chronic disease program at St. Clair in November 2005. It was the plaintiff who declined treatment at that time, and only later consented to treatment in May of 2006. There is no evidence that Warden Jones

interfered with any medical treatment plaintiff needed, and he is entitled to summary judgment on this claim.

Plaintiff also seems to allege that Warden Jones's decisions to assign him to administrative segregation, rather than transfer plaintiff to population in another institution, contributed to a general deterioration of plaintiff's health. The facts indicate, however, that in May 2005, plaintiff told the segregation review board that he would not return to general population at Donaldson because of his fear that gang members would attack him. The review board determined that plaintiff should remain in administrative segregation because of the risk, and, further, that he could not be transferred to another institution because he was unable to identify the gang members who were a threat to him. Without identifying the possible source of the threat, transfer to population in another institution ran the risk of exposing plaintiff to gang members that might be present in that population. Thus, the decision to keep plaintiff in administrative segregation was not made in deliberate indifference to his health, but to protect him from harm by other inmates. Warden Jones is entitled to summary judgment on this claim.

II.  Isolation As Cruel and Unusual Punishment

This claim fails for the same reason just explained above: plaintiff was placed in isolation, not as a form of punishment, but to protect him from harm he claimed other inmates posed to him. Segregation by itself is not so harsh as to rise to the level of being cruel and unusual punishment contrary to the Eighth Amendment.  See Allgood v. Morris, 724 F.2d 1098, 1101 (4th Cir. 1984) ("segregated confinement is not per se unconstitutional"). As the Ninth Circuit has explained:

> The Eighth Amendment standards for conditions in isolation, segregation, and protective custody cells are no different from standards applying to the general population. Prison officials may not deprive prisoners of the basic necessities of life protected by the Eighth Amendment by placing them in different forms of detention. Prison officials must provide all prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Wolfish v. Levi, *supra*, 573 F.2d at 125. To deprive prisoners in isolation, segregation, or protective custody of any of these violates the Eighth Amendment. Of course, in considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without these benefits. See Hutto v. Finney, *supra*, 437 U.S. at 685, 98 S.Ct. at 2570. The longer the prisoner is without such benefits, the closer it becomes to being an unwarranted infliction of pain. Compare Spain v. Procunier, supra, 600 F.2d at 199 (Eighth Amendment requires prisoners confined to their cells 24 hours a day to have regular outdoor exercise) with Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980) (such outdoor exercise can be temporarily denied when prison conditions warrant), cert. denied, __ U.S. __, 101 S. Ct. 2015, 68 L. Ed. 2d 323 (1981).

Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982); see also, Dorrough v. Hogan, 563 F.2d 1259 (5th Cir. 1977).[4]

In this case, plaintiff has offered no evidence touching on how segregation has deprived him of the basic human necessities of "adequate food, clothing, shelter, sanitation, medical care, and personal safety." Plaintiff has attempted to show how segregation per se has resulted in a deterioration of his health. Indeed, as found above, plaintiff was placed in segregation for his own protection, and he received more than adequate medical care and attention while in segregation. The undisputed evidence shows that the fact of segregation alone did not cause a general deterioration of his health. Warden Jones is entitled to summary judgment on this claim.

---

[4] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the old Fifth Circuit Court of Appeals rendered before October 1, 1981.

III. <u>Protection from Harm</u>

Plaintiff's final claim alleges that, while in administrative segregation, he was stabbed by another inmate, and that Warden Jones was deliberately indifferent to plaintiff's need for protection from harm. The undisputed evidence offered by Warden Jones, however, raises a question whether any stabbing actually ever occurred while plaintiff was in segregation. But even assuming it did occur, Warden Jones denies that he was aware of any specific threat to plaintiff before it occurred.

Although prison officials have a duty to protect inmates from harm by other inmates, an official is liable for harm to an inmate only if he was deliberately indifferent to the risk of harm to the inmate.

> The Eighth Amendment prohibits the infliction of cruel and unusual punishment. <u>See</u> U.S. Const. amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 828-29, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Accordingly, prison officials have a duty to protect prisoners from each other. <u>Id.</u> at 833, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811; <u>Zatler</u>, 802 F.2d at 400 (holding that inmates have "a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates"). In order to constitute "deliberate indifference," the prison official *must* have subjective knowledge of the risk of serious harm, and *must* nevertheless fail to reasonably respond to the risk. <u>Farmer</u>, 511 U.S. at 837-38, 114 S. Ct. 1970, 128 L. Ed. 2d 811. A prison official must also have a sufficiently culpable state of mind to be deliberately indifferent. <u>Carter v. Galloway</u>, 352 F.3d 1346, 1349 (11th Cir. 2003). [Italics in original].

<u>Murphy v. Turpin</u>, 159 Fed. Appx. 945, 947-948 (11th Cir. 2005); <u>see also</u> <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1027 (11th Cir. 2001) (*en banc*).

Once again, Warden Jones's undisputed evidence establishes that he was unaware of any substantial risk of harm to the plaintiff. Warden Jones was not assigned to Donaldson until July

11

2005.  The court notes that a "body chart" dated April 23, 2005, contains a claim by plaintiff that he was "jumped" by his cell partner and "raped."  Certainly, insofar as Warden Jones's potential liability is concerned, he was not assigned to Donaldson when this occurred and cannot be held responsible for failing to protect plaintiff from this particular attack.  The court has been unable to find any other evidence of an assault on the plaintiff in his voluminous medical record.  Simply put, there is no evidence in the record that Warden Jones was ever deliberately indifferent to a threat to the plaintiff, and he is entitled to summary judgment on this claim.

By separate order, the court will grant the motion for summary judgment by the defendants and dismiss plaintiff's claims.

DONE this 20TH  day of July, 2007.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE